Filed 7/31/13

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C067178 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F00181) |
| v. | |
| GEORGE HANNA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Delbert W. Oros, Judge. Affirmed.

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II through IV.

1

Defendant George Hanna appeals from his convictions of several crimes. The jury concluded he arranged a meeting with a minor in order to engage in lewd and lascivious behavior (Pen. Code, § 288.4, subd. (b)),[1] attempted lewd and lascivious conduct with a child under the age of 14 years (§§ 288, subd. (a); 664), and attempted to use harmful material to seduce a minor (§§ 288.2, subd. (b); 664).

He claims (1) the court erred as to the charge of attempted lewd conduct with a child under the age of 14 years by not instructing the jury on the defense of mistake of fact regarding the victim's true age; (2) the prosecutor committed misconduct in his closing argument by asserting facts that were not in evidence; (3) the court erred by not instructing on the defense of entrapment; and (4) cumulative error requires reversal.

We disagree with each of his contentions and affirm the judgment.

FACTS

A 13-year-old minor lived with her father, D.R. (hereafter father). Acting against her father's rule, the minor maintained an Internet MySpace social network account. After learning of this, father viewed the minor's MySpace page. The minor's profile name or moniker was "Brebre," which was not her actual first name. She falsely stated on her MySpace profile that she was 18 years old. She also had posted a picture of herself wearing a top with spaghetti straps pulled down below her shoulders which her father would not allow.

While father was viewing the MySpace page, at around midnight, the page indicated the minor had just received an e-mail from someone named "King Jorge" (hereafter King). King asked the minor if she wanted to have oral sex. To dissuade King from any further sexual communications with his daughter, father responded to the message by writing, "I'm 13," is that "okay with you?"

---

[1]     Undesignated references to sections are to the Penal Code.

2

King wrote back by instant messaging instead of e-mail. He wrote, "Are you a cop?" Father responded, "LOL," meaning "laughing out loud." Father was continuing to play the role of a 13-year-old to identify King and possibly arrange a meeting with him. Father then wrote, "Are you a weirdo?"

To father's last question, King wrote, "No. Do you live in Sacramento?" Father responded, "Well, why the fuck wud nbe a pig [*sic*], " referring to King's earlier question about being a cop. Answering King's next question about where the minor lived, father wrote, "Well, yeh, my profile says that."

King typed back, "This might be a set up." Father, responded, "Not very smart," referring to King's question of where the minor lived. Answering the assertion of a setup, father wrote, "Then bye King, if you don't want to chat. L8R."

King responded, "I do. Tell me about yourself." Father wrote, "I go to South Park Middle School. H8TIN life there." South Park Middle School was a fictional name based on the South Park television show. Father also asked King to tell about himself.

King wrote, "I'm a bouncer at a Latin night club." Father asked him, "What [do you] bounce LOL." King responded he was a security guard at a club. He also mentioned the MySpace profile said Brebre was 18. Still acting the part of his daughter, father wrote, "I know but I can['t] see the hot older guys if I don't lie. Foo, get with it."

The dialogue continued, with father trying to keep King communicating with him by making King think he was a real 13-year-old girl who was interested in older men.

At 12:22 a.m., father wrote: "You have a girlfriend? I don't need another dude with a chica."

King: "I don't have a chica."

Father: "Na, you don't want to fuck with a 13 year old. You're playing with me. My last man fucked me a few time but started to get weird on me and stop [*sic*]. Older guys always do.

King: "No way. I'm totally interested in you."

3

At 12:28 a.m., father wrote: "I can't drive yet. God you're fine. I saw your pics."

At 12:30 a.m., father wrote: "Um, once but my last man kept trying to fuc in the azz. I didn't like it. It hurt so bad never been eaten out." (*Sic*.) At about the same time, King wrote: "Not my dick is too fat. I wouldn't try doing that to you." (*Sic*.) Father responded, "Really. No way. How fat?"

Believing he might be able to get King into more trouble, father asked to see a picture of his penis. King wrote back, "If you want to see my dick go to PhoneShag.com and search for mother_fucker." Wanting to receive the actual picture, father wrote that his phone would not pull up the Web site.

At about 12:36 a.m., King wrote, "I know, I really want to suck some pussy." Father responded, "Want mine hotty?"

Ultimately, father scheduled a place and time to meet King. The two were to meet at a nearby convenience store as soon as possible that morning after the chat ended. King wrote he would be in a white truck that had a broken radiator.

Father wrote, "Hey, you have condoms? I ran out." King wrote, "In a half hour go outside." Father responded, "I can't get preg again," meaning "she" could not get pregnant again. King then wrote, "No, I don't." Father wrote back, "They sell them in the store where I'm about to meet you." Father testified he told King to go inside the store and buy condoms with the hope of getting him recorded on the store's video cameras.

King wrote back, "I'm eating your pussy, right?" Father responded, "Can you get them first, but I want to fuck you."

Father went directly to the convenience store and waited. He also took along his own camera. After waiting a while, he went inside to buy a drink. Walking away from the counter, he looked outside and saw a white truck drive in pretty fast. It had water spilling out underneath it.

Father got his camera ready and walked out of the store. A man exited the truck and began walking towards the store. As father walked up to the man, he raised his camera to take a picture of him. The man asked, "Do I know you?" Father replied, "Yeah, you want to fuck my 13 year old," and then he started taking pictures. The man walked away. As he did, he made a gesture of turning around to get into his truck. Father said, "Don't do it. I'll kill you." The man ran down the street, leaving his truck in the parking lot. In court, father identified defendant as the man he met at the convenience store.

Later that morning, defendant admitted to an investigating police officer that he had been browsing MySpace earlier when someone with the moniker of "Brebre" contacted him. Brebre said she thought he "was fine and wanted to fuck." Defendant said he did not know Brebre was 13. When the officer reminded him he had been told by Brebre she was 13, he said he must not have read that part of their messages. She had told him she was 18 and he thought she looked 18.

He said that after he and Brebre were to meet at the convenience store, they were to go back to her house "to check things out and if it happened, it happened." They never met, he said, because a male approached him and threatened to kill him.

Detectives inspecting defendant's personal computer found that the text of instant messages between "King Jorge" and "Brebre" had been deleted and moved into "unallocated space" on the hard drive. They saved the text of the messages and printed them out as part of their report. In addition, detectives found a digital image of a penis in the hard drive's unallocated space.

Following trial, the court sentenced defendant to a state prison term of three years four months, computed as follows: the middle term of three years for attempted lewd conduct, plus four months (one-third the middle term) for attempted use of harmful material to seduce a child, the middle term of three years for arranging to meet a minor to engage in lewd behavior, and then stayed the latter sentence pursuant to section 654.

5

In this appeal, defendant claims (1) the court erred for not instructing on the mistake-of-fact defense to the attempted lewd conduct charge; (2) the prosecutor committed misconduct in his closing argument by asserting facts not in evidence; (3) the court erred by not instructing on the defense of entrapment; and (4) cumulative error.

DISCUSSION

I

*Decision Not to Instruct on Mistake-of-Fact Defense*

Defendant asked the court to instruct the jury on good faith mistake of fact regarding Brebre's age as a defense to the charges, including the charge of attempted lewd conduct with a person under the age of 14 years. The trial court denied the request. It apparently believed the mistake-of-fact defense did not apply to a claim of attempted lewd conduct with a child under the age of 14 years. It also denied the request as to the other charged offenses because it determined there was insufficient evidence to support the defense. It held there was insufficient evidence that defendant reasonably and actually believed Brebre was 18 years old so as to justify instructing on the mistake-of-fact defense.

Defendant claims the court erred by not instructing the jury on his mistake-of-fact defense. He argues the defense applies to an attempt to commit a lewd act on a minor under 14 years of age, that sufficient evidence justified giving an instruction on the defense here, and that the court's failure to give the instruction was prejudicial. Neither defendant nor the Attorney General has cited a published opinion addressing whether the mistake-of-fact defense applies to an attempt to commit a lewd act on a child under 14 years of age, and we have found none.

We conclude the mistake-of-fact defense applies to an attempt to commit a lewd act on a child under 14 years of age, and there was sufficient evidence here to justify instructing on the defense. However, we conclude the court's omission of the instruction was not prejudicial error.

6

Section 26 codifies the defense of mistake of fact. It "provides in pertinent part that persons who 'committed the act or made the omission charged under an ignorance or mistake of fact, which disproves a criminal intent,' are not criminally liable for the act. Put another way, people do not act unlawfully if they commit acts based on a reasonable and honest belief that certain facts and circumstances exist which, if true, would render the act lawful. [Citations.]" (*People v. Reed* (1996) 53 Cal.App.4th 389, 396.)

The mistake-of-fact defense, as a matter of public policy, does not apply to the commission of a lewd act on a child under the age of 14 years. (*People v. Olsen* (1984) 36 Cal.3d 638, 648, 649.) Defendant, however, was not charged with *committing* a lewd act. He was charged with *attempting* to commit a lewd act.

" ' "[A]n attempt to commit any crime requires a specific intent to commit that particular offense." ' " (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1549.) In this case, "[t]o sustain a conviction of attempted violation of section 288[, subdivision] (a), the prosecution [had] the burden of demonstrating (1) the defendant intended to commit a lewd and lascivious act with a child under 14 years of age, and (2) the defendant took a direct but ineffectual step toward committing a lewd and lascivious act with a child under 14 years of age. [Citations.]" (*People v. Singh* (2011) 198 Cal.App.4th 364, 368.)

To attempt a violation of section 288, subdivision (a), the defendant must have specifically intended to commit a lewd act on a child under 14 years of age. If defendant's intent was to commit a lewd act on an 18-year-old, he cannot by definition be guilty of an attempt to commit a lewd act on a 13-year-old. If the facts were as he allegedly believed, the commission of the acts he attempted would not have violated section 288, subdivision (a). He would have lacked the specific intent required to commit the attempt crime. Thus, we conclude a mistake-of-fact defense may apply to the crime of attempting to commit a lewd act on a child under 14 years of age.

The defense of mistake of fact was not only available to defendant, but there was sufficient evidence during trial to instruct on it. The trial court had a duty sua sponte to

7

instruct on the defense because defendant was relying on it, substantial evidence supported it, and the defense was not inconsistent with the defendant's theory of the case. (*People v. Breverman* (1998) 19 Cal.4th 142, 157.)  Evidence of a defense is sufficiently substantial to trigger a trial court's duty to instruct on it sua sponte if it is sufficient for a reasonable jury to find in favor of the defense.  (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

There was substantial evidence on which a jury could believe defendant intended to have sexual relations with an 18-year-old.  Brebre's MySpace profile listed her age as 18.  Although father, pretending to be Brebre, digitally "told" defendant "she" was 13 and lied on her profile page, father also depicted Brebre as sexually experienced beyond her years.  In father's explicit, masked words, Brebre had already had sex with other older men, run out of her supply of condoms, and had even been pregnant.  Defendant told the investigating officer that Brebre said she was 18.  This was sufficient evidence to justify giving the mistake-of-fact instruction.

At issue, then, is whether the trial court's error in not instructing the jury on the mistake-of-fact defense was prejudicial.  We conclude it was not.

"Error in failing to instruct on the mistake-of-fact defense is subject to the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 . . . . [Citation.]"  (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1431.)  Under this standard, a conviction "may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred [citation]."  (*People v. Breverman, supra,* 19 Cal.4th at p. 178, fn. omitted.)

Based on reviewing the entire record, we conclude it was not reasonably probable defendant would have obtained a more favorable outcome had the court instructed on the mistake-of-fact defense.  Defendant does not claim the trial court incorrectly instructed

8

on the elements of attempted lewd act with a child under 14 years of age.  Thus the jury knew it had to determine defendant intended to attempt a lewd act upon a child under 14 years of age.

And the evidence that defendant actually believed Brebre was 13 years old was strong.  After being informed she was 13 years old -- "I'm 13 and if that's okay with you" -- and after being given an opportunity to end the dialogue upon learning she was 13 years old, defendant did not end the conversation.  Instead, he said he was interested in continuing to chat, and he asked to know more about Brebre.  After being told she attended middle school, he asked about her profile stating she was 18.  Once father, digitally responding as Brebre, explained "she" lied in order to be able to speak with older men, defendant was satisfied with her explanation, and he pursued meeting her to engage in sex.

After being told again Brebre was 13 years old, defendant replied that he was interested in her.  He complied with her request to forward a photograph of his penis by directing her to a Web site to see the photo, he agreed to meet her as soon as possible, and he confirmed with her that they would engage in oral copulation.  Having made these preparations, he drove to the convenience store to meet a girl he clearly understood by then to be 13 years old.  It is not reasonably probable that a jury instruction on the mistake-of-fact defense would have changed the verdict under these circumstances.  The court thus did not commit prejudicial error when it did not instruct on defendant's defense.

## II

### *Prosecutorial Misconduct*

Defendant contends the prosecutor committed prejudicial misconduct during closing argument by asserting facts that were not in evidence.  He claims the prosecutor repeatedly said defendant initially denied to the police that he had been searching on the

9

Internet, when in fact the investigating officer testified defendant admitted he had been on MySpace when he was asked.

Defendant acknowledges he did not object to the prosecutor's argument. His direct attack is thus forfeited. (*People v. Hill* (1998) 17 Cal.4th 800, 820.) He collaterally attacks by claiming he suffered ineffective assistance of counsel when his attorney failed to object to the argument. We disagree with his contention, as he fails to show prejudice.

A.      *Additional background information*

Sacramento Police Officer Mark Roddy was the investigating officer. After meeting with father at the convenience store, Officer Roddy contacted defendant at his apartment. Roddy asked defendant if he knew why the police were contacting him. Defendant said he did not. Roddy asked defendant if he had been out that evening. Defendant said his brother is a tow truck driver, and he had been out with him towing cars. Roddy asked defendant if he went to see any females that evening. Defendant said he did not. Roddy asked if he was on MySpace that evening speaking with any females. Defendant said he was browsing his MySpace. Roddy then told defendant that he (defendant) knew the reason why the police were there and it would be best if he told the truth. Defendant agreed and told Roddy about his conversation with Brebre.

During closing argument at trial, the prosecutor asserted at least four times that defendant had initially denied being on the Internet when he was questioned by Officer Roddy. Referring to the evidence of defendant's statements, the prosecutor stated that when Officer Roddy contacted defendant, defendant told him "he was towing cars with his brother, that he hadn't been out, hadn't been searching the Internet and then you [*sic*] ultimately said, yeah, I was, and then gives a statement."

Arguing the jury could rely on defendant's statement to Officer Roddy as evidence of consciousness of guilt, the prosecutor paraphrased the statement as follows: "I wasn't

talking with anyone on the Internet this evening, first statement. But, yet, we find out later that he was. Is that first statement false or misleading? You get to decide."

The prosecutor briefly reiterated this point two more times. He said, "Initially, he [defendant] wasn't online but then he ultimately said he was but deleted the messages." Again summarizing defendant's statement, the prosecutor said: "When the police knock on his door later, where have you talking been [*sic*] evening? I've towing been [*sic*] cars with my brother. [¶] Have you been talking online? Hm, no."

B.     *Analysis*

We must decide whether defense counsel's failure to object to the prosecutor's assertions that defendant originally denied being on the Internet constituted ineffective assistance of counsel. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698].)

Even assuming for the sake of argument that counsel's failure to object was unreasonable, we still conclude defendant did not suffer ineffective assistance of counsel. This is because there is no reasonable probability that had counsel objected, defendant would have received a more favorable verdict. An objection to clarify to the jury that defendant had not denied being on the Internet, but had instead answered Officer Roddy's question evasively by saying he had been browsing MySpace, would not have changed this verdict. Defendant admitted he had been on MySpace that evening, and his computer's hard drive preserved his conversation with Brebre. That conversation and his

11

actions to meet with Brebre for sexual relations were sufficient to convict defendant of his charges beyond a reasonable doubt. Removing the prosecutor's argument asserting consciousness-of-guilt evidence would not have changed the verdict.

III

*Entrapment*

Defendant faults the trial court for not giving a jury instruction on the defense of entrapment. The evidence, however, did not justify an entrapment instruction. Entrapment focuses on police conduct, not the conduct of a private citizen. (*People v. Watson* (2000) 22 Cal.4th 220, 223.) Defendant introduced no evidence of any entrapment by a law enforcement officer.

IV

*Cumulative Error*

Defendant contends the cumulative effect of the errors warrants reversal. We disagree. It was not reasonably probable the jury would have reached a different result more favorable to defendant had the errors not been committed. (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 349.) Each error was harmless individually, and when considered cumulatively, there still was no reasonable probability the jury would have rendered a different verdict absent the errors.

DISPOSITION

The judgment is affirmed.

           NICHOLSON    , Acting P. J.

We concur:

      MAURO    , J.

      HOCH    , J.
