Filed 5/20/16  P. v. Villapando CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VENSON VILLAPANDO,<br><br>    Defendant and Appellant. | G050497<br><br>(Super. Ct. No. 10WF0127)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Sharon Rhoades and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

## INTRODUCTION

Defendant Venson Villapando appeals from the judgment entered after a jury found him guilty of one count of attempting contact with a minor with the intent to commit a lewd act. Villapando answered a personal advertisement on Craigslist that was posted by a Huntington Beach police detective posing as a 13-year-old girl named "Jessie." After being told that he was communicating with a 13-year-old girl, Villapando continued to communicate with Jessie for months, planning to meet her and pay her to have sex with him.

Villapando contends the trial court erred by (1) admitting his statement to police that he had previously paid for sex with a prostitute whom he had met on Craigslist, and (2) excluding evidence that, unlike other individuals who respond to similar Craigslist advertisements purportedly posted by minors, Villapando did not express excitement about Jessie's young age. Villapando also argues the trial court erred by refusing his request that the jury be instructed on the mistake-of-fact defense.

We affirm. For the reasons we explain, none of Villapando's contentions of error has merit.

## FACTS

In July 2009, Detective Alan Caouette of the Huntington Beach Police Department was in the vice unit of the special investigations unit which dealt with sex- and alcohol-related crimes. He set up stings on prostitutes working the streets and Internet crimes related to prostitution and child abuse.

Craigslist is a global, online, Internet-based advertisement discussion board that is used to buy and sell items and services. Caouette used Craigslist as an investigative tool in the vice unit, by posing as a prostitute or a minor. The casual encounter section of Craigslist is an online advertisement board for people seeking companionship.

2

# I.

## CAOUETTE'S CRAIGSLIST ADVERTISEMENT; VILLAPANDO'S JULY 9, 2009 E-MAIL EXCHANGES WITH CAOUETTE[1]

On July 9, 2009, Caouette posted an advertisement to Craigslist which bore the heading, "looking to get by in a hard time" followed by "w4m" and "hb." Caouette testified that the term "w4m" referred to "woman for man" in "the prostitution world." He testified "hb" stood for the City of Huntington Beach. The advertisement read: "looking to have a good time are u :)." Caouette intended to portray himself as a 13-year-old female named Jessie Browne.

Caouette received in excess of 100 responses to his advertisement. He sent out a response, saying, "im only 13 and need a $100 so if still interested let me know, jess." He testified that typically, after he communicates that he is a minor, 10 to 15 percent of those who respond to an advertisement, such as the one posted in this case, continue to correspond with him.

Caouette received an e-mail from Villapando in response to the Craigslist advertisement, stating: "hey i want to have fun… what do you have in mind… anything is possible." After Caouette sent the e-mail communicating that he was 13 years old, Villapando sent a reply e-mail within 15 minutes. Villapando asked for a picture and a phone number and also asked what the $100 was for. Caouette told Villapando that he needed money "cuz I wanta buy something,, i only have text minutes I need to pay my bill… ."

Villapando responded: "what are you going to do for me? to earn that $100." Caouette responded: "what u want,, ill do most anything." Villapando asked where the sender was located, and whether that person was trying to set him up. Villapando and Caouette thereafter exchanged the following e-mails that evening.

---

[1] All grammatical and spelling errors were contained in the original messages.

Caouette: "well seeing im 13 i cant drive so i would need to be picked up,, by my house is cool i can go whereever,,, and NO im not setting u up ,, ." Villapando: "where do you live? r u down to fck?" Caouette: "sure are u down to give me a 100 bucks ,, and can u pickme up i cant drive." Villapando: "im sure...i promise, im a man of my word." Caouette: "ok i can do it i guess, but we need a condom cuz i cant get into trouble,, whats the plan ,, do i need to walk to u." Villapando: "well tell me where you want to meet and i will pick you up... just go up to me, i will get out of my car and i will where my key chain around my neck . . . go up to me and say hi... will take it from there.... but you need to tell me where to meet." Caouette: "ok,, what do i call u ,, and what should i wear and can i shower first ,, and where we going." Villapando: "just say 'hey dude do you have a cigaratte' where what ever you want... i was think we should get a hotel room and chill for like an hour... im only 22!!![2] tell me where to meet you so when your done showering im already there." Caouette: "hotel room, wow ,, maybe i can shower there if u want.. ." Villapando: "yeah we can shower together... so where do you want me to pick you up?" Caouette: "where do u live so i can give ur directions." Villapando: "fullerton." Caouette: "shit my mom just cam home,,gota go ill be back." Villapando: "ok well im going to play basketball, for like an hour... if you want to do it tonight im still down or tomorrow afternoon... shoot me an email."

## II.

VILLAPANDO AND CAOUETTE CONTINUE E-MAIL CORRESPONDENCE FROM JULY 10 THROUGH DECEMBER 22, 2009, NEGOTIATING A TIME AND PLACE FOR VILLAPANDO TO PAY JESSIE $100 TO HAVE SEX WITH HIM.

Villapando and Caouette maintained e-mail communications from July 10 through December 22, 2009. Those e-mail communications included the following e-mail exchange on July 10. Villapando: "If you still want to hang out... Tell me where

---

2 Villapando was 25 years old at the time.

4

to meet you at." Caouette: "im not wanting to hang out in need to make some money,, silli." Villapando: "Well make that money then... You have to let me know now where to meet." Caouette: "yes later ok." Villapando: "Well I got stuff to do today... But hit me up n we'll see! Right now would be the best time."

On July 11, Villapando wrote: "Hey I'm off work today! Just hitting u up to see if u want tmake some money? I have $150 that can be urs... Hit me up." Caouette did not respond to Villapando that day. On July 14, Caouette responded that he would be "back on Thursday" and "HAD TO GO OUT OF TOWN WITH GRANDMA."

On August 4, Villapando wrote: "Hey let me know if you still want to make money." On August 7, Caouette wrote, "sure where do u live" and also wrote, "notta." On August 8, Villapando wrote, "i live in fullerton... where do you live at?"

From August 12 through 26, Villapando and Caouette engaged in the following e-mail exchanges. Caouette: "Hb,, did i tell u i was 13 years old,, are u cool with that.. and what do you have in mind."[3] Villapando: "lets meet up and i will tell you.... r u down for tonight?" Caouette: "maybe but i dont like suprises im a straight shooter,, i like to know what is expected.. sooo.. ." Villapando: "i want to do it with you, you know what i mean.... when can you do it? be straight up." Caouette: "like sex u mean,,, iil do almost anything." Villapando: "Yeah, so when can you do it?" Caouette: "how old r u ,, i think im free thurs or fri." Villapando: "im 21... lets do it on friday around noon. where do you want to meet?" Caouette: "how bout thurs at 2 ish." Villapando: "I can't do it on thur at 2, I get off work at 4. I can do it on friday after 11am or thurs after 4 pm." Caouette did not respond the same day as the last communication.

From September 4 through December 22, 2009, Villapando and Caouette continued to discuss plans to meet. Villapando told Caouette that he was on the MySpace

---

[3] Caouette testified that this communication was the third time he had told Villapando he was 13 years old.

social media Web site and Caouette should look him up.  Caouette told Villapando that he thought he found Villapando's MySpace page, and asked him about the picture of the "nice" car shown on the Web site and if he was going to pick up Caouette in that car. Villapando asked Caouette how school was going and Caouette told him about school and about a football game he might be going to.  On October 15, Villapando asked if Caouette "can do it on the weekend or weekdays after 8pm."  Caouette:  "yeah after 8 is fine with me,, we have the same deal right,,,,,,u said 100 for sex.. and since i cant drive yet at 13 ,, u gonna pick me up..........and where will we go i think my mom will be home,, :) xoxoxxo."  Villapando:  "well tell me a spot where i can pick u up... We'll figure it out from there."  Caouette:  "coolll sounds fun lets meet this week :)."  Villapando:  "just let me know when and where."

On December 21, Caouette wrote to Villapando:  "hi whats new, how r u im on break from school, so u wanta hook up this week or what. what do u want to do, im trying to earn some $."  Villapando:  "Yea fo sho...  You already know what I want to do! Let me know when you want to do this I'm free after 2pm...$$$."

On December 22, Villapando and Caouette exchanged the following e-mail messages.  Caouette:  "was it a hand job for $100 or what did we negotiate i forgot. remember im only 13 so u will have to pick me up is that cool, give me ur number and ill text u later, k,, anytime after 3 is cool. jess."  Villapando:  "No that wasn't it... Shoot me a text 714[]."  Caouette:  "first tell me what u want so i know what im in for ahhaha,,, i wanta make sure ill do it, u know :)."  Villapando:  "S e x ! :)."

Caouette testified that he was interested in obtaining Villapando's cell phone number not only because it constituted information that would help him confirm Villapando's identity, it also allowed Caouette's partner, Huntington Beach Police Detective Brian Smith, who took over communications with Villapando through text messaging, to communicate in real time.

6

## III.

VILLAPANDO ARRANGES TO MEET JESSIE AT A FAST FOOD RESTAURANT WHERE HE IS
CONFRONTED BY CAOUETTE AND SMITH, AND ARRESTED.

Through text messaging on December 22, 2009, Smith, assuming the identity of Jessie, arranged with Villapando to meet him that day at a particular fast food restaurant. Their text messages included the following conversation. Villapando: "Cool! So r u still down to meet?" Smith: "yeah as long as u can pick me up...where u want to go." Villapando: "Ummm dunno... I can pick u up n we can get a hotel." Smith: "okay I guess ill tell my mom im heading out to eat or something so il be good for a lil bit." Villapando: "Ok where should I pick u up... It will probably take me an hour to get there cuz of traffic." Smith: "okay... ill get cleaned up... ." Villapando: "Well let me knwwhere to pick u up." Smith: "okay...um theres a carls jr around the corner ...I hang out there." Villapando: "Wats the cross street." Smith: "beach and yorktown." Villapando: "Ok... Hey ur not a cop r u?lol kind of scared." Smith: "nope." Villapando: "I hope so." Smith: ":) just." Villapando: "U wanna meet there around 4:45." Smith: "sure ...just promise me ur a nice guy and ull wear a condom." Villapando: "No worries, I won't force you to do anything u don't want." Smith: "thanks... its actually been a while since ive done anything lol ur not gonna stick it in my butt or anything right lol." Villapando: "Haha do u want me to... Lol." Smith: "during the summer... ." Villapando: "When is the last time u had sex." Villapando: "Have u done this before?" Smith: "u mean sex for money? Or sumthing else." Villapando: "Yea." Smith: "only once...but it was a guy I knew." Villapando: "Ok, I've never done it." Smith: "so is 100 okay with u." Villapando: "yea." Smith: "okay :)" and "hey im gonna hop in the shower real quick so don't text me pleeeease."

About 20 minutes later, Smith sent Villapando a text message telling him he was out of the shower. Villapando confirmed he was on his way to the restaurant where they would meet.

7

Caouette saw Villapando's car parked at the fast food restaurant and then saw him drive out of the parking lot. Caouette instructed two officers in a marked police car to stop Villapando. After Villapando was read his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, he told Caouette that he had come to Huntington Beach to meet a girl and pay her $100 for sex. He told Caouette that he had gone to the fast food restaurant to talk to Jessie, but then had changed his mind and decided to go to a casino instead. Villapando also said he intended to go to the casino directly from his house and stopped at the fast food restaurant to use the bathroom. Villapando acted confused; he had $100 in his wallet.

After he was transported to the Huntington Beach Police Department, Villapando admitted he had replied to an advertisement posted on Craigslist, received an e-mail from a 13-year-old girl, and talked with her about "negotiating sex acts for a hundred dollars."

Villapando acknowledged that he had $100—the price negotiated with Jessie—in his wallet, but stated that he was going to give it to her and not have sex with her. He said he had won $100 at a casino the day before and he wanted to "just give the hundred dollars to Jessie." He explained he was just trying to meet new friends. Villapando told Caouette and Smith that he had become suspicious because Jessie's cell phone number had a 310 area code. He admitted he had paid $100 for a prostitute whom he had previously met on Craigslist.

## IV.

### VILLAPANDO'S TESTIMONY

The prosecutor read into the record a transcript of Villapando's prior testimony at his first trial of the charged offenses.[4] As pertinent to the issues on appeal,

---

[4] Villapando was previously found guilty by a jury of one count each of attempting to commit a lewd and lascivious act upon a child under the age of 14 years and of

8

Villapando testified that he answered the Craigslist advertisement because he just wanted to talk to someone. He thought there was "no way" a 13 year old would be on Craigslist because it is an adult Web site. He did not think the pictures that Caouette had sent of Jessie depicted a minor. He testified that he had not intended to have sex with Jessie because he "didn't know who that person was." Villapando said that when he went to Huntington Beach on December 22, 2009, to meet Jessie, he had not decided what he was going to do, even though they had discussed having sex for money, which he knew was illegal. He acknowledged he had discussed paying Jessie for sex, but that was "[j]ust talk" and "what people do online."

During the second trial, Villapando testified that in his mind, if, when he met Jessie, he discovered she was 13 years old, he would have told her "this is all wrong" and he was not there to meet a 13 year old but a woman, and then he would have left. On the other hand, Villapando testified, "[i]f I would have found out that she was an adult and we both talked about what each other's needs [are] and we both agreed as adults to move forward and have sex, then, yes, I would have paid for it."

PROCEDURAL HISTORY

Villapando was charged in an amended information with attempting to commit a lewd and lascivious act upon a child under 14 years old, in violation of Penal Code sections 664, subdivision (a) and 288, subdivision (a) (count 1), and attempted contact with a minor with the intent to commit a lewd act on a child under 14 years old, in violation of Penal Code section 288.3, subdivision (a) (count 2). The jury found Villapando not guilty as to count 1 but guilty as to count 2. The trial court imposed a

---

attempting contact with a minor with the intent to commit a lewd act upon the minor. (*People v. Villapando* (June 10, 2013, G046110) [nonpub. opn.].) On appeal, this panel reversed the judgment of conviction and remanded for a new trial on the ground the trial court erred by failing to give an entrapment instruction sua sponte. (*Ibid*.)

9

total prison sentence of three years but suspended execution of the sentence, placing Villapando on five years' formal probation on terms and conditions. Villapando appealed.

## DISCUSSION

### I.

THE TRIAL COURT DID NOT ERR BY ADMITTING VILLAPANDO'S ADMISSION THAT HE HAD PREVIOUSLY PAID TO HAVE SEX WITH A PROSTITUTE WHOM HE HAD MET THROUGH A CRAIGSLIST ADVERTISEMENT.

Villapando argues that the trial court erred by admitting evidence of Villapando's admission to Caouette that he had previously answered an advertisement on Craigslist, which resulted in him meeting a prostitute in a hotel and paying her $100 to have sex with him. We review claims of evidentiary error for an abuse of discretion. (*People v. Cooper* (2007) 148 Cal.App.4th 731, 740.)

Before trial, the prosecutor sought admission of Villapando's statement "that he had answered an ad on Craigslist in the past after a friend told him about it and he met a girl at a hotel and paid her $100 for sex." The prosecutor argued that statement was relevant to show Villapando's knowledge, intent, and lack of mistake, under Evidence Code section 1101, subdivision (b). The trial court ruled that the statement was admissible because Villapando's full statement was being introduced and it was admissible under section 1101, subdivision (b) to prove intent or lack of mistake.

Evidence Code section 1101, subdivision (a) prohibits admission of evidence of a person's character, including evidence in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. The exceptions to the bar on admissibility of evidence of uncharged acts are set forth in section 1101, subdivision (b), which states, in relevant part: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or

10

other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act."

"'[Evidence Code s]ection 1101, subdivision (b) allows evidence of uncharged misconduct when it is relevant to establish a material fact other than the person's bad character or criminal disposition. [Citation.] The admissibility of such evidence turns largely on the question whether the uncharged acts are sufficiently similar to the charged offenses to support a reasonable inference of the material fact they are offered to prove.'" (*People v. Burnett* (2003) 110 Cal.App.4th 868, 880-881.)

Evidence of a defendant's uncharged misconduct, if relevant under Evidence Code section 1101, subdivision (b), is subject to Evidence Code section 352. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.) Section 352 gives the trial court discretion to exclude evidence if its probative value "is substantially outweighed by the probability that its admission will . . . necessitate undue consumption of time or . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." To be admissible, evidence of a defendant's uncharged misconduct "must have substantial probative value that is not greatly outweighed by the potential that undue prejudice will result from admitting the evidence." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1123.)

Villapando's prior conduct of answering a Craigslist advertisement, which resulted in his paying someone $100 for sex, is sufficiently similar to his conduct in the instant case so as to be relevant to prove that his intent in meeting Jessie was to actually have sex with her. Consistent with his prior conduct, Villapando answered a Craigslist advertisement, negotiated with Jessie to pay her $100 to have sex with him, and arranged to meet her.

In his opening brief, Villapando argues: "The fact that [Villapando] had previously met an adult woman on Craigslist and paid $100 for sex did nothing to advance the idea that he believed the present 'victim' was actually under the age of 14.

11

While both incidents involved meeting a person on the internet for the purpose of having or paying for sex, the offenses were qualitatively different because one involved the crime of soliciting prostitution and the other involved attempting to commit a lewd act against a child." He argues the evidence "lacked any probative value on the relevant question of whether he actually believed he was communicating with a 13 year-old, and the jury would likely have held the prior incident against him, despite its lack of relevance."

The evidence of Villapando's prior Craigslist experience was not offered to prove his intent to have sex with a child under 14 years old, but to prove his intent to meet Jessie to have sex with her. That evidence was particularly probative to show Villapando's intent in light of his statements that (1) he did not intend to have sex with Jessie, (2) his negotiations to have sex with her for money were just talk, and (3) the money he had with him when he was arrested was his "poker" money that he planned to give to her.

The probative value of that evidence was not substantially outweighed by the potential that undue prejudice would result from its admission. We find no error

II.

THE TRIAL COURT DID NOT ERR BY EXCLUDING EVIDENCE THAT, UNLIKE VILLAPANDO, SOME OTHER INDIVIDUALS WHO HAVE RESPONDED TO SIMILAR ADVERTISEMENTS EXPRESSED EXCITEMENT ABOUT JESSIE'S YOUNG AGE.

During the cross-examination of Caouette, Villapando's trial counsel asked: "In using the persona of Jessie as a 13-year-old, have you engaged with other individuals who talked about fantasies and what they'd like to do to a 13-year-old?" The trial court sustained the prosecutor's objection based on relevance. Out of the presence of the jury, Villapando's trial counsel argued:

12

" . . . My question in this regard is going to the fact that he [(Caouette)] has engaged with other individuals and had conversations about them being 13 and had other individuals talk about how that excited them sexually and that Mr. Villapando did none of this.

"As an offer of proof, I can point to other cases where Detective Caouette has been mentioned in similar reversals that we had in Mr. Villapando's case.

"The reason I think it's relevant is because it demonstrates that there are individuals who are seeking out 13-year-olds and intending to meet with those 13-year-olds, and there's individuals like Mr. Villapando who is not responding to that."

The trial court responded: "I think the only question for the jury to decide is is what Mr. Villapando did enough to create the attempt. So I'm going to stay with my ruling. I just think it's irrelevant."

In his opening brief, Villapando argues: "The trial court erred by ruling the evidence was not relevant and excluding it on that basis. The primary disputed fact at the trial was whether [Villapando] believed he was communicating with an adult or a 13 year-old. So evidence from the experienced officer that people seeking contact with 13 year-olds routinely show excitement about that fact, and [Villapando] acted differently, would have supported the defense position on the disputed issue."

The trial court did not err by concluding the proffered evidence was irrelevant. Villapando was in a relatively small group (10 to 15 out of 100), who continued to correspond with Jessie after being informed that she was only 13 years old. That Villapando did not express excitement specifically about Jessie's age, unlike some others, is not relevant to prove whether he attempted to commit a lewd act upon a child under 14 or that he attempted contact with a minor for the purpose of committing a lewd act upon a child under 14 years of age.[5]

---

[5] Villapando's trial counsel did not state, as part of her offer of proof, that people seeking contact with 13 year olds "routinely" show excitement about that fact. She stated

13

III.

THE TRIAL COURT DID NOT ERR BY REFUSING TO INSTRUCT THE JURY ON THE DEFENSE OF MISTAKE OF FACT BECAUSE EVEN IF VILLAPANDO MISTAKENLY BELIEVED JESSIE WAS AN ADULT, THAT DEFENSE IS UNAVAILABLE TO HIM BECAUSE HE INTENDED TO ENGAGE IN THE UNLAWFUL CONDUCT OF PAYING HER FOR SEX.

Villapando argues the trial court erred by denying his request that the jury be instructed on the mistake-of-fact defense, as set forth in CALCRIM No. 3406, in light of the trial evidence that he believed he was communicating with an adult. Although the trial court's reasoning for refusing to give that instruction was incorrect, CALCRIM No. 3406 should not have been given to the jury because Villapando's intended conduct was unlawful.

A.

*Mistake of Fact Is a Defense to the Crime of Attempted Contact with a Minor with the Intent to Commit a Lewd Act upon a Child Under 14 Years of Age.*

The jury found Villapando guilty of attempted contact with a minor with the intent to commit a lewd act upon a child under 14 years of age. The jury was instructed with a modified version of CALCRIM No. 1124 regarding the elements of that offense, as follows: "The defendant is charged in count 2 with attempting to contact a minor with the intent to commit lewd act upon a child. [¶] To prove that the defendant is guilty of the crime of contacting a minor with the intent to commit a lewd act upon a child, the People must prove that: [¶] 1. The defendant contacted or communicated with a minor; [¶] 2. When the defendant did so, *he intended to commit lewd act upon a child involving that minor*; [¶] AND [¶] 3. The defendant knew or reasonably should have known that the person was a minor. [¶] A *minor* is a person under the age of 18. [¶] Under the law, a person becomes one year older as soon as the first minute of his or her

she sought to elicit testimony that some individuals have expressed such excitement, while Villapando did not in this case.

14

birthday has begun.  [¶] *Contacting or communicating* with a minor includes direct and indirect contact or communication.  That contact or communication may take place personally or by using any electronic communications system or any telecommunications or a computer.  [¶] *To decide whether the defendant intended to commit lewd act upon a child, please refer to the separate instructions that I have given you on that crime*." (First & fourth italics added, some capitalization omitted.)

The instruction referred to in CALCRIM No. 1124, regarding how the jury should decide whether Villipando intended to commit a lewd act upon a child, was CALCRIM No. 1110.  It was modified to state, inter alia:  "To prove that the defendant is guilty of the crime of committing a lewd act upon a child, the People must prove that:  [¶] 1. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing; [¶] 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; [¶] AND [¶] 3. *The child was under the age of 14 years* at the time of the act." (Italics added, some capitalization omitted.)  Thus, the commission of the crime of committing a lewd act upon a child (as distinguished from an *attempt*) does not require a finding that the defendant knew the child was under 14 years old.

The jury was also instructed that in order to prove Villapando guilty of the crime of attempted contact with a minor with the intent to commit a lewd act upon a child under 14 years old, the People "must prove," inter alia, that he *intended* to commit the crime of contacting a minor with the intent to commit a lewd act upon a child "as charged in Count 2."

The jury was therefore instructed that in order to find Villapando guilty of attempted contact with a minor with the intent to commit a lewd act upon a child under 14 years of age, with that minor, the jury must have found Villapando believed the minor whom he contacted was under the age of 14.

15

B.

*The Trial Court's Reason for Refusing to Give the Jury CALCRIM No. 3406 Was Incorrect.*

During trial, Villapando's trial counsel requested that the jury be instructed on the mistake-of-fact defense in the form of CALCRIM No. 3406.[6] The trial court explained its tentative ruling, denying that request, as follows: "There's a request for 3406. I have it up on the screen completed, except for some language that will be required, if applicable. But I wanted to give you a chance because I'm going to let both sides argue in the morning. [¶] My tentative is to deny the request for mistake of fact as a defense. I'll cite *People versus Olsen*[ (1984)] 36 Cal.3d 638 cited in the head notes. [¶] I did some independent research, and so far I've only found 40 cases that support the *Olsen* analysis, including I've read *Paz* when they added the 14- and 15-year-old. So I wanted to give you my tentative ruling so you'd be prepared for that." (Last italics added.)

The following morning, Villapando's trial counsel argued that the mistake-of-fact instruction should be given because "in this case we do have evidence of mistake in fact, that there is evidence that Mr. Villapando believed the person he was communicating with was over the age of 14." Villapando's trial counsel argued that *People v. Olsen* (1984) 36 Cal.3d 638 did not apply because that case involved the actual violation of committing a lewd or lascivious act on a child under 14 years of age, in

---

[6] CALCRIM No. 3406 provides: "The defendant is not guilty of ____ *<insert crime[s]>* if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit ____ *<insert crime[s]>*. [¶] If you find that the defendant believed that ____ *<insert alleged mistaken facts>* [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for ____ *<insert crime[s]>*. [¶] If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for ____ *<insert crime[s]>*, you must find (him/her) not guilty of (that crime/those crimes)."

violation of Penal Code section 288, subdivision (a), which does not include a knowledge requirement, thereby rendering the mistake-of-fact defense inapplicable. Villapando's counsel pointed out that unlike the offense of committing a lewd or lascivious act on a child under 14 years of age, the two charged offenses in the instant case required proof that Villapando acted with a specific intent to commit the crimes. The prosecutor stated: "And I agree with the court and do not believe that it's appropriate in this case."

The trial court concluded it would not instruct the jury on mistake of fact as set forth in CALCRIM No. 3406, stating, "as the court indicated yesterday, it's done its own research, including moving forward and looking at amendments to the section, and the request to add 3406 will be denied."

As the Attorney General acknowledges in the respondent's brief, the trial court's reliance on *People v. Olsen*, *supra*, 36 Cal.3d 638, to refuse to instruct on the mistake-of-fact defense was in error. In *People v. Olsen*, the Supreme Court held that the mistake of fact is not a defense to the offense of committing a lewd or lascivious act on a child under 14 years old, in violation of Penal Code section 288, subdivision (a). The Supreme Court explained: "It is true that at common law ""'an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense.'"" [Citation.] However, it is evident that the public policy considerations in protecting children under the age of 14 from lewd or lascivious conduct are substantial—far more so than those associated with unlawful sexual intercourse. These strong public policies are reflected in several Penal Code statutes, and they compel a different rule as to section 288. [¶] The legislative purpose of section 288 would not be served by recognizing a defense of reasonable mistake of age. Thus, one who commits lewd or lascivious acts with a child, even with a good faith belief that the child is 14 years of age or older, does so at his or her peril." (*People v. Olsen*, *supra*, at p. 649.) The Supreme

17

Court in *People v. Olsen* did not address the crime of attempting to commit a lewd or lascivious act on a child under 14 years of age.

In *People v. Hanna* (2013) 218 Cal.App.4th 455, 461 (*Hanna*), the appellate court acknowledged that under *People v. Olsen*, *supra*, 36 Cal.3d at pages 648, 649, "[t]he mistake-of-fact defense, as a matter of public policy, does not apply to the commission of a lewd act on a child under the age of 14 years." The *Hanna* court explained that the defendant in the case at bar, "however, was not charged with *committing* a lewd act. He was charged with *attempting* to commit a lewd act." (*Hanna*, *supra*, at p. 461.) The court held: "We conclude the mistake-of-fact defense applies to an attempt to commit a lewd act on a child under 14 years of age, and there was sufficient evidence here to justify instructing on the defense." (*Ibid.*)

In *Hanna*, *supra*, 218 Cal.App.4th at page 461, the court explained its holding, as follows: "[Penal Code s]ection 26 codifies the defense of mistake of fact. It 'provides in pertinent part that persons who "committed the act or made the omission charged under an ignorance or mistake of fact, which disproves a criminal intent," are not criminally liable for the act. Put another way, people do not act unlawfully if they commit acts based on a reasonable and honest belief that certain facts and circumstances exist which, if true, would render the act lawful. [Citations.]' [Citation.]" The court continued: "'""[A]n attempt to commit any crime requires a specific intent to commit that particular offense . . . .""' [Citation.] In this case, '[t]o sustain a conviction of attempted violation of [Penal Code] section 288[, subdivision] (a), the prosecution [had] the burden of demonstrating (1) the defendant intended to commit a lewd and lascivious act with a child under 14 years of age, and (2) the defendant took a direct but ineffectual step toward committing a lewd and lascivious act with a child under 14 years of age. [Citation]' [Citation.]" (*Id.* at pp. 461-462.)

Furthermore, "[t]o attempt a violation of [Penal Code] section 288, subdivision (a), the defendant must have specifically intended to commit a lewd act on a

18

child under 14 years of age. If defendant's intent was to commit a lewd act on an 18 year old, he cannot by definition be guilty of an attempt to commit a lewd act on a 13 year old. If the facts were as he allegedly believed, the commission of the acts he attempted would not have violated section 288, subdivision (a). He would have lacked the specific intent required to commit the attempt crime. Thus, we conclude a mistake-of-fact defense may apply to the crime of attempting to commit a lewd act on a child under 14 years of age." (*Hanna*, *supra*, 218 Cal.App.4th at p. 462.)

Here, in order for Villapando to be found guilty of attempting contact with a minor with the intent to commit a lewd act on a child under 14 years of age, he must have intended to attempt contact with a minor with the intent to commit a lewd act on a child under 14 years old, involving that minor. Therefore, the defense of mistake-of-fact instruction should have been given if sufficient evidence supported giving it to the jury. The Attorney General agrees the mistake-of-fact defense "[a]pplies" (boldface omitted) to the crime of attempted contact with a minor with the intent to commit a lewd act on a child under 14 years old.

C.

*Although There Was Substantial Evidence That Would Have Supported a Finding That Villapando Believed Jessie Was an Adult to Support a Mistake-of-fact Defense, Villapando Admitted That He Intended to Pay to Have Sex with Jessie, Thereby Disqualifying Him from Raising That Defense.*

"Evidence of a defense is sufficiently substantial to trigger a trial court's duty to instruct on it sua sponte if it is sufficient for a reasonable jury to find in favor of the defense." (*Hanna*, *supra*, 218 Cal.App.4th at p. 462.) In the respondent's brief, the Attorney General concedes Villapando initially testified he thought Jessie was 18 years or older. Villapando also testified that he did not know Jessie's actual age and that it was possible she was 13 years old. Substantial evidence was presented at trial, which would have supported a finding that Villapando believed Jessie was an adult.

19

However, as the Attorney General points out in the respondent's brief, and as expressly set forth in CALCRIM No. 3406, mistake of fact is available as a defense only if the defendant's conduct would have been *legal* under the facts as he or she believed them to be. The Attorney General argues, "[Villapando]'s plan was at the very least to pay for sex, in itself an illegal act."

At trial, Villapando testified regarding his intentions upon meeting Jessie and confirming that she was adult. He stated that after they "both talked about what each other's needs [are] and we both agreed as adults to move forward and have sex, then, yes, I would have paid for it." As prostitution is illegal, Villapando was not eligible to claim mistake of fact as a defense to the charged offenses. (See Pen. Code, § 26 [persons not capable of committing crimes include "[p]ersons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves *any* criminal intent" (italics added)].) Thus, although the trial court's reasons for doing so were not correct, the court properly refused to instruct the jury on the mistake-of-fact defense.

D.

*Even if CALCRIM No. 3406 Should Have Been Given to the Jury,*
*Any Such Error Was Harmless.*

"'Error in failing to instruct on the mistake-of-fact defense is subject to the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 . . . . [Citation.]' [Citation.] Under this standard, a conviction 'may be reversed in consequence of this form of error only if, "after an examination of the entire cause, including the evidence" [citation], it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred [citation].'" (*Hanna*, *supra*, 218 Cal.App.4th at pp. 462-463.)

Here, the evidence admitted at trial, showing that Villapando attempted to contact a minor with the intent to commit a lewd act upon a child under 14 years of age, was overwhelming. Villapando's testimony explaining his actions was inconsistent at

20

best. Based on the record before us, it is not reasonably probable Villapando would have obtained a more favorable outcome had the jury been instructed with CALCRIM No. 3406.

DISPOSITION

The judgment is affirmed.


FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

21