[No. H006977. Sixth Dist. Feb. 20, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JESS FLORA, Defendant and Appellant.

## COUNSEL

C. Elliot Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Josanna Berkow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—Defendant Jess Flora was charged by information with a felony violation of a child custody order (former Pen. Code, § 278.5, subd. (a))[1] and false imprisonment (§§ 236-237). The jury convicted him of the child custody order violation charge, but acquitted him of the false imprisonment charge. Appellant appeals his conviction. We affirm.

### FACTS AND PROCEEDINGS

Appellant and Teresa Daily were married on January 27, 1987, and lived in Naselle, Washington. On August 3, 1987, Teresa gave birth to a son, August.

Appellant was physically and verbally abusive of Teresa. On December 6, 1988, while appellant was out of town on a physical therapy appointment for his injured knee, Teresa left their Naselle residence, taking August with

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

her. She left a note for appellant, which read: "Dear Jess, I'm not happy with the way things seem to be going in our relationship. I need to get away and sort out my feelings about the marriage and about you. I'm taking August with me since you will be busy with your physical therapy and doctors' appointments. I will never keep him from you and will never stop you from seeing him. It's just better this way for now. I will be in touch. Teresa."

Teresa saw an attorney who advised her to get a restraining order against appellant. Teresa obtained the restraining order the following day, December 7, 1988.

The hearing on the restraining order was set for December 21, 1988. In the meantime, Teresa left with August for California to visit Teresa's family and friends. While in California, Teresa was informed by appellant by telephone that he had been served with the restraining order.

Teresa and August returned to Washington for the December 21 hearing. At the hearing, Teresa's attorney served appellant, who appeared in propria persona, with her application for divorce.

At this hearing, the court granted Teresa temporary custody of August and limited appellant's visitation to "only as ordered in court proceeding for dissolution of marriage." The court also set the divorce hearing for December 28, 1988.

Teresa and August spent Christmas in San Jose, California, where they stayed with Nancy Daily, Teresa's sister.

On December 26, 1988, Teresa had dinner with Mary Wirth, another sister, at the Wirth residence. August was with Teresa. After dinner, Teresa, with August, left the Wirth house. Teresa put August in the passenger's side of the car, then went over to the driver's side of the car. As Teresa opened the driver's door, appellant suddenly appeared from behind a garbage can, shoved Teresa aside, got into the car, and drove off with August.

Appellant phoned Mary the next day and told her: "I have a message for Teresa, tell her to drop the divorce case or she'll never see August again."

Appellant called Teresa approximately 20 times thereafter, demanding that she drop the Washington divorce action and move to California. In one call, he told Teresa that if she tried to doublecross him, he would kill her. Teresa took appellant seriously.

In another call, appellant asked Teresa to meet him in Costa Rica and to bring with her proof that the divorce action had been dropped. Teresa agreed.

Teresa dropped her divorce action. She told the Washington court that she and appellant had reconciled.

Pursuant to appellant's instructions, Teresa went to Costa Rica alone. She was met at the Costa Rica airport by agents of the International Police (Interpol). Appellant was also waiting for Teresa at the airport. Appellant and Teresa rode together in a cab to the hotel where Teresa saw August sleeping.

In Costa Rica, appellant and Teresa lived together as husband and wife until appellant's arrest by agents of Interpol seven to eight days later. Appellant was jailed, but escaped before long.

Following appellant's arrest, Interpol agents put Teresa and August on a plane to Miami. From Miami, Teresa and August proceeded to California. As instructed by appellant, Teresa rented a small cottage in Campbell. Teresa cooperated with appellant out of fear; she was afraid that if she did not cooperate with appellant, appellant might kill her and her family.

Following his escape, appellant went to Guatemala, and from there returned to California, where he joined and lived with Teresa in Campbell. On March 14, 1989, appellant was arrested.

## CONTENTS

On appeal, appellant contends that:

1. His conviction should be reversed because subdivision (a) of section 278.5 under which he was convicted had been repealed at the time of his conviction.

2. The trial court erred in refusing to instruct the jury on mistake of law as a defense.

3. The trial court erred in directing the jury to find that the Washington State custody order was valid.

DISCUSSION

*Repeal of Section 278.5, Subdivision (a)*

■ Appellant first contends that his conviction should be reversed because subdivision (a) of section 278.5, under which he was convicted, had been repealed at the time of his conviction. We disagree.

The original information charged appellant with a violation of section 278.5, subdivision (b).[2] But after the jury was instructed, the court allowed the People to amend the information by charging a violation of subdivision (a) instead. The jury found appellant guilty of violation of subdivision (a).

At the time the information was amended, subdivision (a) was no longer in the statute books. It had been deleted from section 278.5 by a 1989 amendment which became effective in January 1990. However, the new section 278.5 retained subdivision (b) and made that subdivision the entire new section 278.5. (See Stats. 1989, ch. 1428, § 4, No. 11, West's Cal. Legis. Service, p. 5395 [No. 7 Deering's Adv. Legis. Service, pp. 6180-6181].)

Relying on *People v. Rossi* (1976) 18 Cal.3d 295 [134 Cal.Rptr. 64, 555 P.2d 1313] and its progeny *(People v. Collins* (1978) 21 Cal.3d 208 [145 Cal.Rptr. 686, 577 P.2d 1026]; *People v. Babylon* (1985) 39 Cal.3d 719 [216 Cal.Rptr. 123, 702 P.2d 205]), appellant argues that since the statute under which he was convicted had been repealed prior to his conviction, the conviction should be reversed. *Rossi* held that "when a statute proscribing certain designated acts was repealed without a saving clause, all prosecutions for such act that had not been reduced to final judgment were barred. [Citation.]" (18 Cal.3d at pp. 298-299.) The repealing statute of section 278.5, subdivision (a), contained no saving clause.

---

[2] Prior to the 1989 amendment, section 278.5 provided: "(a) Every person who in violation of the physical custody or visitation provisions of a custody order, judgment, or decree takes, detains, conceals, or retains the child with the intent to deprive another person of his or her rights to physical custody or visitation shall be punished by imprisonment in the state prison for 16 months, or two or three years, a fine of not more than ten thousand dollars ($10,000), or both; or by imprisonment in a county jail for a period of not more than one year, a fine of not more than one thousand dollars ($1,000), or both. [¶] (b) Every person who has a right to physical custody of or visitation with a child pursuant to an order, judgment, or decree of any court which grants another person, guardian, or public agency right to physical custody of or visitation with that child, and who within or without the state detains, conceals, takes, or entices away that child with the intent to deprive the other person of that right to custody or visitation shall be punished by imprisonment in the state prison for 16 months, or two or three years, a fine of not more than ten thousand dollars ($10,000), or both; or by imprisonment in a county jail for a period of not more than one year, a fine of not more than one thousand dollars ($1,000), or both." (Stats. 1984, ch. 1207, § 3, p. 4139.)

*Rossi, Collins,* and *Babylon* are, however, distinguishable. In *Rossi,* defendant was convicted of five counts of oral copulation. At the time the charged acts were committed, Penal Code section 288a broadly proscribed all oral copulation, even between consenting adults. After judgment was rendered but before it became final, section 288a was amended to proscribe only certain specified acts of oral copulation, such as those committed with the use of force or upon a minor. The acts for which defendant was convicted had ceased to be criminal under the amendment. The Supreme Court reversed the conviction, holding that "it is 'the universal common-law rule that when the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct. The rule applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it.' (*Bell* v. *Maryland* (1964) 378 U.S. 226, 230 . . . .)" (18 Cal.3d at p. 304.)

*Collins* involved a similar issue. In *Collins,* defendant pled guilty to nonforcible oral copulation under former section 288a. Because defendant was found by the court to be a mentally disordered sex offender, the court ordered him committed to a state hospital for treatment. During defendant's commitment, section 288a was amended to decriminalize oral copulation between consenting adults. The Supreme Court nullified the sentence, holding that *Collins* was controlled by *Rossi.* (21 Cal.3d at p. 213.)

In *Babylon,* defendants were found guilty of violating former section 593e, which prohibited the manufacture, distribution, or sale of any device with the purpose or intention of facilitating the interception or decoding of any over-the-air transmission made by a subscription television service. Defendants appealed their convictions. During the pendency of the appeal, section 593e was amended to decriminalize the acts of defendants. The Supreme Court, citing *Rossi* and other cases, reversed the convictions.

*Rossi, Collins,* and *Babylon* thus share one element in common: the decriminalization of the acts of which the defendants therein were convicted. That element is not present in the case *sub judice.* In this case, the act of violating a court's child custody order was criminal prior to the amendment of old section 278.5, and remained criminal after the amendment. Even the severity of the penalty for the violation was not altered by the amendment.

It does not avail appellant to argue that section 278.5, as amended, covers only violations by a "person who has a right to physical custody of or visitation with a child pursuant to an order, judgment, or decree of any court" because appellant had in fact a limited court-ordered right of

visitation. The Washington order of December 21, 1988, granted Teresa the "temporary care, custody and control" of August, "subject to visitation" by appellant "only as ordered in court proceeding for dissolution of marriage." Therefore, appellant was, as a matter of law, a person with a right to "visitation . . . pursuant to an order, judgment, or decree of any court" within the meaning of new section 278.5.[3]

Consequently, appellant is not entitled to reversal of his conviction under *Rossi*.

### Mistake of Law

Appellant contends next that the trial court erred in refusing to instruct the jury on mistake of law as a defense. The contention is without merit.

Mistake of law is a defense where the mistake negates the specific intent required for the crime. (*People* v. *Vineberg* (1981) 125 Cal.App.3d 127, 137 [177 Cal.Rptr. 819].) In cases of violation of child custody orders, the specific intent required for the crime is the intent to deprive another person of that person's right to custody or visitation. (See *People* v. *Howard* (1984) 36 Cal.3d 852, 859 [206 Cal.Rptr. 124, 686 P.2d 644] (conc. opn. of Bird, C. J.).) However, a mistake of law instruction is only appropriate where the evidence supports a reasonable inference that the claimed mistake was held in good faith. (*People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].)

Here, appellant's conduct does not comport with his claim of good faith. The manner in which appellant forcibly took August, detained him, and concealed him from Teresa and the law belies his protestation of good faith. If appellant truly believed that the Washington order was invalid and not enforceable in California, he would not have acted as he did: hide from Teresa and the law, even flee the country. In acting like the fugitive that he was, appellant only succeeded in demonstrating his consciousness of guilt. As the court in *Stewart* said: " 'Whether a claim is advanced in good faith

---

[3] Although appellant has not raised the point, we note that because the trial court actually instructed in the language of section 278.5, subdivision (a), the jury was never instructed, nor did it impliedly find, that the first element of section 278.5 (formerly § 278.5, subd. (b), viz. "Every person who has a right to physical custody of or visitation with a child pursuant to an order . . . .") was in fact satisfied by the evidence.

However, even if this omission occurred, any error would be harmless because appellant clearly was a person who met the description set forth in section 278.5. Under the Washington order, the court unmistakably had made its interim determination pendente lite. That order awarded the mother temporary custody, subject to the exercise of appellant's visitation rights which were to be detailed or specified in a future dissolution proceeding.

does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith.' [Citations.]" (*People* v. *Stewart, supra,* 16 Cal.3d at p. 140.)

Appellant's claim that his mistake arose from the erroneous advice of counsel provides no defense. Were we to hold otherwise, we would be putting premium on counsel's ignorance of the law and counsel's advice, above the law. (*People* v. *Vineberg, supra,* 125 Cal.App.3d at p. 137; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 220, p. 254.)

### Validity of Washington Order

■ Appellant's contention that the trial court erred in directing the jury to find that the Washington custody order was valid is likewise without merit.

Appellant requested the trial court to instruct the jury that a " 'court order,' [*sic*] is an order issued by a court of competent jurisdiction. This means the court issuing the order must have the power to enforce the order in this State. Failure to file an out of state order denies this State jurisdiction." The court denied the request.

During its deliberations, the jury sent the court a note inquiring: "Is the restraining order issued in the State of Washington, Clark County, dated 21 December 1988, valid in the State of California, County of Santa Clara." The court replied that "California shall recognize and enforce an initial decree of a court of another state which had assumed jurisdiction as required by law." The court's reply was based on Civil Code section 5162, which provides: "The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this title or which was made under factual circumstances meeting the jurisdictional standards of the title, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this title."

Appellant argues that the trial court's ruling was erroneous because "[b]y telling the jury that California must recognize an out of state custody order, . . . the trial court, in effect, deprived the jury of its duty to decide whether the Washington State custody order applied in California," adding that this "question was one of fact within the jury's province to resolve."

The trial court ruled correctly. The question of whether a custody order issued by a Washington court should be recognized in California involves

an interpretation not only of Civil Code section 5162, but also of the full faith and credit clause of the United States Constitution and the Uniform Child Custody Jurisdiction Act to which both California and Washington are signatories. It is, therefore, a question of law. "[Q]uestions concerning the construction of statutes and other writings" are questions of law. (Evid. Code, § 310, subd. (a).)

Therefore, the trial court did not err in instructing the jury that the Washington state custody order was valid and is recognized in California.

DISPOSITION

The judgment is affirmed.

Agliano, P. J., and Cottle, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 1, 1991. Mosk, J., was of the opinion that the petition should be granted.