[No. B231186. Second Dist., Div. Five. Sept. 13, 2011.]

In re MARIA D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MARIA D., Defendant and Appellant.

COUNSEL

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KUMAR, J.[*]—

## I. BACKGROUND

The juvenile court found true an allegation in a petition filed pursuant to Welfare and Institutions Code section 602 that appellant committed an attempted lynching in violation of Penal Code[1] sections 664 and 405a. Appellant was declared a ward of the court and ordered to a camp community placement program for a maximum term of two years.

 Appellant contends the court's order sustaining the petition based on a finding that she committed an attempted lynching was "legally incorrect." Specifically, she argues the prosecution improperly alleged attempted lynching (a felony) because, to the extent she may have done anything illegal, her conduct was covered by more specific legislation—that which proscribes incitement of a riot (a misdemeanor). The premise of appellant's claim—that general principles of attempt set forth in section 664 are not applicable to lynching because the incitement to riot legislation specifically addresses and punishes the conduct—is incorrect. Accordingly, the claim is rejected and the orders of the juvenile court are affirmed.

## II. FACTS

### A. *Prosecution Evidence*

On November 10, 2010, at approximately 4:15 p.m., Los Angeles Sheriff's Department Deputy Anthony Maldonado responded to a radio call directing him to a location on 125th Street in Los Angeles. When he arrived, the scene in front of a single-family residence was "chaotic." Approximately 10 to 15

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Penal Code.

people were screaming and asking for the assistance of law enforcement. Four deputies arrived in three patrol cars—one car was in the rear of the residence and the others in the front.

The officers were outnumbered so they asked the men in the group to approach and place their hands on the hoods of the patrol cars. The females were told to remain "inside the fence line" of the residence. All of the men (approximately eight African-American males) complied with the officers' request with the exception of Venerando Coronel[2] (the sole Hispanic male). A deputy approached Coronel, took control of his hands, and escorted him to one of the patrol vehicles.

Coronel "kept squirming." He used profanity and indicated he was not doing anything wrong. Coronel was placed in the rear seat of a patrol car. He then lay down on the seat and kicked a rear passenger window, causing it to shatter.

Appellant crossed the fence line and approached the officers from behind. The deputies were "surrounded" by the previously detained individuals. Appellant yelled profanities and instructed the deputies to release Coronel because he had done nothing wrong.

Los Angeles Sheriff's Department Deputy Tania Giggles observed appellant as she walked toward the other deputies. Appellant was saying, "[f]uck you pigs . . . [l]et him go" as she was gesturing to the males who had their hands on the patrol cars as if to say "come here." The African-American males looked in appellant's direction. Appellant extended her arms such that it appeared she was going to grab a deputy and pull him away from the vehicle where Coronel was detained. Deputy Giggles reached appellant and grabbed her when appellant was approximately two feet away from a deputy who was struggling with Coronel in the patrol car.

B. *Defense Evidence*

Venerando Coronel was appellant's boyfriend. He observed appellant behind the fence when he was in the back of the patrol car. Appellant "didn't do nothing [*sic*] except follow the same procedure as everybody else." Nonetheless, as appellant was positioned behind the fence, a deputy summoned her. When appellant reached the deputy, she was handcuffed and placed in a patrol car. Coronel did not hear appellant say anything and did not observe her make any motions to anyone.

Appellant testified on her own behalf. There was a commotion in front of the residence because someone attempted to stab one of the men and then

---

[2] The deputy referred to this individual as Coronel Venerando. However, he testified his name was Venerando Coronel.

fled the scene. The police arrived and she stayed behind the fence. At some point a male deputy told Deputy Giggles to arrest appellant. Deputy Giggles summoned appellant to her location where the deputy handcuffed appellant, sat her down on the sidewalk, and eventually placed appellant in a patrol car. Appellant never approached any of the deputies and did not yell, "Fuck you pigs. Let him go."

## III. DISCUSSION

A special statute controls over a more general statute. (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) "[W]hen the Legislature has enacted a specific statute addressing a specific matter, and has prescribed a sanction therefor, the People may not prosecute under a general statute that covers the same conduct, but which prescribes a more severe penalty, unless a legislative intent to permit such alternative prosecution clearly appears. [Citation.]" (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1250 [265 Cal.Rptr. 144, 783 P.2d 731], italics omitted.) In this respect, the general statute that proscribes the attempted commission of crimes—section 664—applies to criminal conduct only if " 'no [other] provision is made by law for the punishment of those attempts . . . .' " (*People v. Duran* (2004) 124 Cal.App.4th 666, 674 [21 Cal.Rptr.3d 495], quoting § 664.)

This case presents the question of whether the statute prohibiting and punishing the incitement of a riot (§ 404.6, subd. (a)) also punishes attempted lynching. If it does, appellant was subject to prosecution for inciting a riot but could not be prosecuted for attempted lynching, i.e., the application of section 664 to section 405a. For the reasons set forth below, we conclude the statute addressing incitement of a riot does not punish conduct amounting to attempted lynching.

California's lynching statute prohibits "[t]he taking by means of a riot[3] of any person from the lawful custody of any peace officer . . . ." (§ 405a.) That offense is a felony and is punishable in state prison for two, three or four years. (§ 405b.) Application of the attempt provision in section 664 to lynching, thus creating attempted lynching, results in a felony subject to punishment of 12, 18 or 24 months in state prison. (§ 664, subd. (a).)

Section 404.6, subdivision (a) makes it a misdemeanor to incite a riot. It provides, "Every person who with the intent to cause a riot does an act or engages in conduct that urges a riot, or urges others to commit acts of force

---

[3] A riot is "[a]ny use of force or violence, disturbing the public peace, or any threat to use force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law . . . ." (§ 404, subd. (a).)

or violence, . . . and at a time and place and under circumstances that produce a clear and present and immediate danger of acts of force or violence . . . , is guilty of incitement to riot." (§ 404.6, subd. (a).) ■ The punishment for this offense is up to a $1,000 fine and one year in jail. (§ 404.6, subd. (b).)

■ Courts have recognized the Legislature, on occasion, intends a specific statute render section 664 inapplicable to a certain crime. (See, e.g., *People v. Duran, supra*, 124 Cal.App.4th at pp. 670–674 [prosecution/punishment under § 12076 for providing false information on an application to obtain a firearm renders § 664 inapplicable to § 12021—possession of a firearm]; *People v. Alberts* (1995) 32 Cal.App.4th 1424, 1425–1429 [37 Cal.Rptr. 401] (*Alberts*) [prosecution/punishment under § 455 for attempted arson of " 'any structure' " renders § 664 inapplicable to § 451, subd. (b)— arson of an "inhabited structure"].) Special statutes, such as those in *Alberts* and *Duran*, punish the same objective that would be punished if the underlying crime were subject to the general application of section 664, i.e., Alberts's attempt to set fire to a structure or Duran's attempt to illegally obtain a firearm. An examination of *Alberts*'s rationale explains why incitement of a riot is not a special statute that trumps the applicability of section 664 to lynching.

■ *Alberts* addressed the appropriate punishment provision for attempted arson of an inhabited structure. The arson statute provided that, if the object of the arson was an inhabited structure, a completed crime subjected the defendant to punishment of three, five or eight years in prison. (§ 451, subd. (b).) If section 664 applied to attempted arson of an inhabited structure, the punishment would be one-half of that dictated in the arson statute or a state prison triad of 18 months, 30 months or four years. (§ 664, subd. (a).) On the other hand, section 455 indicated punishment for attempted arson of *any structure* was a less onerous 16 months, two or three years in state prison. (*Alberts, supra*, 32 Cal.App.4th at p. 1427.)

*Alberts* held the applicable punishment provision for attempted arson of an inhabited structure was section 455 for three main reasons: (1) the defendant is entitled to the " 'benefit of every reasonable doubt' " when construing penal statutes; (2) in order to find section 664 applicable, section 455 would require a judicial rewrite such that the statute read " 'any structure *[except an inhabited dwelling]*' "; and (3) the conduct covered by the combination of sections 664 and 451, subdivision (b) is "general" and is included in the "special" statute, i.e., section 455. (*Alberts, supra*, 32 Cal.App.4th at pp. 1427–1428, italics added.)

■ These principles are not applicable in the instant case. First, there is no statutory doubt necessary to conclude appellant should receive the benefit

of misdemeanor punishment for inciting a riot when she, in fact, attempted to commit a felony by causing the escape of a police detainee. While appellant's boyfriend was in the patrol car, appellant walked toward the vehicle, exclaimed "[f]uck you pigs . . . let him go," signaled eight males to join her, and extended her arms as if she were going to grab the deputy who was attempting to control her boyfriend—a man who had just shattered the rear passenger window of the police vehicle with his feet. Although a penal statute should be interpreted as " 'favorably to the defendant' " as " 'its application reasonably permit[s]' " (*Alberts, supra*, 32 Cal.App.4th at p. 1427, quoting *Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617]), it is not reasonable to conclude the Legislature intended to cover punishment for conduct such as that exhibited by appellant in a misdemeanor statute defining punishment for incitement of a riot.

■ Second, the statute punishing the incitement of a riot does not address punishment for an attempt to free another from a lawful police detention. The objectives covered by the two statutes are different. In order to be guilty of attempted lynching, a defendant must harbor a specific intent to free a lawfully detained person. (See *People v. Medina* (2007) 41 Cal.4th 685, 694 [61 Cal.Rptr.3d 677, 161 P.3d 187], citing § 21a [an attempt to commit a crime requires the specific intent to commit the crime].) On the other hand, incitement of a riot requires proof that a defendant have the specific intent to do nothing more than cause a riot. (§ 404.6, subd. (a).) Because of the different mental states and potentially different conduct, it cannot be said that incitement of a riot is a special statute applicable to conduct that amounts to an attempted lynching.

There is no need to judicially rewrite section 404.6, subdivision (a) to exclude attempted lynching. The statute stands alone to punish conduct and criminal intent that is less egregious than that attributable to an attempt to free a lawfully detained person from police custody.

Accordingly, a defendant who commits conduct amounting to an attempted lynching is subject to punishment provided by sections 664 and 405a. Appellant was properly prosecuted pursuant to these provisions.[4]

---

[4] Any suggestion by appellant that she could be subject to punishment for attempted lynching only if a riot "had been established" is rejected. Although the taking of a police detainee must be "by means of a riot" (§ 405a) in order to prove *lynching*, an established riot need not be reflected in the overt act giving rise to an *attempted lynching*. (See, e.g., *People v. Vizcarra* (1980) 110 Cal.App.3d 858, 862 [168 Cal.Rptr. 257] [although robbery requires property be taken from another by means of force or fear, "[i]t is not necessary . . . for this element to be reflected in the overt act of an attempted robbery if the crime has not progressed to that point"].) It was only necessary for the prosecution to prove appellant had the specific intent to commit a lynching and that she took a direct but ineffective act toward its commission. (§ 21a.)

## IV. DISPOSITION

The orders of the juvenile court are affirmed.

Turner, P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 14, 2011, S197356.